UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARELL NAUTIGUE JENKINS,

                                Plaintiff,

                v.

OFFICER S (DOWNSTATE), *et al.*,

                                Defendants.

No. 19-CV-10728 (KMK)

OPINION & ORDER

Appearances:

Darell Nautigue Jenkins
Dannemora, NY
*Pro Se Plaintiff*

Sarande Dedushi, Esq.
NYS Office of The Attorney General
New York, NY
*Counsel for Defendant Officer Stojkaj*[1]

KENNETH M. KARAS, United States District Judge:

Plaintiff Darell Nautigue Jenkins ("Plaintiff"), proceeding pro se, brings this Action

under 42 U.S.C. § 1983 against Officer Stojkaj ("Defendant"), alleging that Defendant failed to

protect Plaintiff from an attack by an inmate.  (Am. Compl. (Dkt. No. 9).)  Before the Court is

Defendant's Motion To Dismiss (the "Motion").  (Not. of Mot. (Dkt. No. 26).)  For the reasons

that follow, the Motion is granted in part and denied in part.

---

[1] The Clerk of the Court is respectfully directed to update the docket to reflect the
accurate spelling of Officer Stojkaj's name.  (*See* Def.'s Mem. of Law in Supp. of his Mot. To
Dismiss ("Def.'s Mem.") 1 (Dkt. No. 27); *see also* Am. Compl. 4 (Dkt. No. 9) (indicating that
Plaintiff was not sure how to spell Defendant's name).)

I.  Background

A.  Factual Background

The following facts are taken from Plaintiff's Complaint, (Compl. (Dkt. No. 1)), and

Amended Complaint, (Am. Compl.), and assumed true for purposes of deciding the Motion.

On January 15, 2018, Plaintiff "had problems with" Defendant.  (*Id*. at 4.)[2]  Defendant

told Plaintiff that "he was gonna make sure something happened to [Plaintiff]," because Plaintiff

"had words with [Defendant]."  (*Id*.)  Two days later, on January 17, 2018, "a[n] unidentified

inmate slashed [Plaintiff] from behind" while Plaintiff was in line going to eat.  (*Id*.)  After the

attack, Defendant got between Plaintiff and the unidentified inmate, who got away.  (*Id*.)

Defendant did not go after the unidentified inmate.  (Compl. 5.)  Instead, Defendant handcuffed

Plaintiff and said, "I told you."  (Am. Compl. 4.)  Plaintiff was subsequently placed in protective

custody.  (*Id*.; Compl. 5.)  Plaintiff alleges that Defendant "had a role in arranging the attack."

(Compl. 5.)  As a result of the attack, Plaintiff had to receive nine stitches on his face.  (Am.

Compl. 6.)  Plaintiff further alleges that as a result of the attack, he is nervous, scared, and

mentally unstable when someone is behind him.  (*Id*.)  Plaintiff seeks damages of $350,000.

(*Id*.)[3]

B.  Procedural Background

Plaintiff's Complaint was filed on September 20, 2019.  (Compl.)  On January 16, 2020,

the Court granted Plaintiff's petition to proceed in forma pauperis ("IFP").  (Dkt. No. 7.)  On

---

[2] Because they are inconsistently paginated, the Court uses the ECF-generated page
number in the upper right-hand corner in referring to both the Complaint and the Amended
Complaint.

[3] Plaintiff in his Amended Complaint reduces his earlier damages request of $500,000.
(*See* Compl. 6 (requesting damages of $500,000).)

February 3, 2020, the Court issued an Order To Amend (the "Order").  (Dkt. No. 8.)  The Order

gave Plaintiff 60 days to file an amended complaint, absent which his complaint would be

dismissed for failure to state a claim.  (*Id.* at 6.)  On February 20, 2020, Plaintiff filed his

Amended Complaint.  (Am. Compl.)  On August 17, 2020, Defendant filed a letter requesting a

pre-motion conference regarding his anticipated motion to dismiss.  (Dkt. No. 22.)  On

August 25, 2020, the Court adopted a briefing schedule.  (Dkt. No. 24.)

Defendant filed the Motion on September 24, 2020.  (Not. of Mot.; Def.'s Mem.)  On

November 17, 2020, Defendant filed a letter requesting that the Motion be deemed fully

submitted.  (Dkt. No. 28.)  The Court granted his request.  (Dkt. No. 29.)  On January 15, 2021,

Defendant provided to the Court a letter written by Plaintiff.  (*See* Dkt. No. 31.)  Plaintiff's letter

stated that he had previously filed his brief.  (Dkt. No. 31-1.)  In response, the Court extended

until January 29, 2021, Plaintiff's deadline to file his opposition.  (Dkt. No. 32.)  On February 4,

2021, Defendant filed another letter requesting that the Motion be deemed fully submitted.  (Dkt.

No. 34.)  The Court granted his request.  (Dkt. No. 35.)  In response, Plaintiff filed a letter, dated

March 1, 2021, stating that he had filed his opposition, but was "having ongoing problems with

[his] mail."  (Dkt. No. 37.)  The Court again extended Plaintiff's deadline to file his brief, this

time until March 31, 2021.  (Dkt. No. 38.)  On April 28, 2021, Defendant submitted a third letter

requesting that the Court deem the Motion fully submitted.  (Dkt. No. 39.)  The Court granted

this request.  (Dkt. No. 40.)  By letter dated May 5, 2021, Plaintiff requested another three-week

extension.  (Dkt. No. 42.)  The Court granted this request.  (Dkt. No. 43.)

On June 3, 2021, the Court granted a final request from Plaintiff for another extension.

(Dkt. No. 44.)  Plaintiff's submission, dated June 29, 2021, was filed on July 7, 2021.  (Pl.'s

Opp'n for Summ. J. ("Pl.'s Aff.") (Dkt. No. 45); Mem. of Law in Supp. of Pl.'s Opp'n to Def.'s

Mot. for Summ. J. Pursuant to FRCP Rule 56 ("Pl.'s Mem.") (Dkt. No. 46).)  On July 22, 2021,

Defendant filed his Reply.  (Reply Mem. of Law in Further Supp. of Def.'s Mot. To Dismiss

("Def.'s Reply") (Dkt. No. 47).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.*  (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

4

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

B.  Analysis

1.  Official Capacity Claims

Defendant argues that Plaintiff's claim against him in his official capacity is barred by the Eleventh Amendment.  (Def.'s Mem. 4.)  The Court agrees.

A suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the

official's office.").  Accordingly, an official sued in his or her official capacity is "entitled to

invoke the Eleventh Amendment immunity belonging to the state."  *Ying Jing Gan*, 996 F.2d at

529.  Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

CONST. amend. XI.  "Although by its terms the Amendment applies only to suits against a State

by citizens of another State, [the Supreme Court has] extended the Amendment's applicability to

suits by citizens against their own States."  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356,

363 (2001).  In other words, "the Eleventh Amendment means that, as a general rule, state

governments may not be sued in federal court unless they have waived their Eleventh

Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment

immunity."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation, quotation marks, and

alterations omitted).  No waiver or abrogation of immunity is present here.  Plaintiff brings suit

under 42 U.S.C. § 1983, which does not waive sovereign immunity.  *See Ying Jing Gan*, 996

F.2d at 536 ("[A]lthough § 1983 imposes liability on every 'person' who, under color of state

law or custom deprives another of a federal right, neither a state nor a state official sued in his

official capacity is a 'person' within the meaning of this section." (citing *Will*, 491 U.S. at 64,

71)); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]overeign

immunity also extends to bar claims for monetary damages brought against state officers sued

under [§] 1983 in their official capacities." (citing *Will*, 491 U.S. at 64)).  Thus, Plaintiff's claims

against Defendant in his official capacity are dismissed.

2.  Failure To Protect Claim

Defendant argues that Plaintiff fails to plausibly allege a failure to protect claim under the

Eighth Amendment.  (Def.'s Mem. 4–6.)  The Court disagrees.

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison

officials to "take reasonable measures to guarantee the safety of inmates in their custody."

*Hayes v. N.Y.C. Dep't of Corr*., 84 F.3d 614, 620 (2d Cir. 1996); *see also Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (same).  "Prison officials are liable . . . for harm incurred by an inmate

if they act with deliberate indifference to the inmate's safety."  *Price v. Oropallo*, No. 13-CV-

563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014).  To satisfy the deliberate indifference

standard, a plaintiff must show that (1) "he is incarcerated under conditions posing a substantial

risk of serious harm," and (2) "the defendant prison officials possessed sufficient culpable

intent."  *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 834).  The first prong is objective and

requires that prison officials provide inmates with "basic human needs, one of which is

'reasonable safety.'"  *Helling v. McKinney*, 509 U.S. 25, 30, 33 (1993) (quoting *DeShaney v.*

*Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).  Defendant does not challenge

the first prong.  (*See* Def.'s Mem. 4–6.)  "The second prong of the deliberate indifference test,

culpable intent, in turn, involves a two-tier inquiry."  *Hayes*, 84 F.3d at 620.  In particular, "a

prison official has sufficient culpable intent if he has knowledge that an inmate faces a

substantial risk of serious harm[,] and he disregards that risk by failing to take reasonable

measures to abate the harm."  *Id.*  Defendant challenges the second prong.  (*See* Def.'s Mem. 4–

6.)

As the Supreme Court has made clear, "the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must

7

also draw the inference."  *Farmer*, 511 U.S. at 837; *see also Price*, 2014 WL 4146276, at *8

(explaining that to establish deliberate indifference, "a plaintiff must prove that the defendant

official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety").

"Mere negligence by a prison officer does not establish a claim for 'deliberate indifference' to

[a] prisoner's safety."  *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08-CV-4294, 2010 WL 1222017,

at *4 (S.D.N.Y. Mar. 29, 2010) (citing *Hayes*, 84 F.3d at 620).  A defendant's knowledge can be

established through "inference from circumstantial evidence," including "from the very fact that

the risk was obvious."  *Farmer*, 511 U.S. at 842; *see also Walker v. Schult*, 717 F.3d 119, 125

(2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a

defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of

the risk." (citation and quotation marks omitted)).

As a general matter, surprise attacks do not suggest deliberate indifference by a

corrections officer.  *See Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *8 (S.D.N.Y.

June 11, 2021) ("It is well-established that prison officials cannot be deliberately indifferent to a

surprise attack."); *Fernandez*, 2010 WL 1222017, at *4 (noting the absence of a prior altercation

with or threats from the inmate who attacked the plaintiff).  However, inciting and encouraging a

violent attack plausibly suggests at least deliberate indifference.  *See Jhagroo v. Brown*, No. 16-

CV-3426, 2020 WL 419450, at *7 (S.D.N.Y. Jan. 27, 2020) ("'[I]ntentionally exposing an

inmate to the risk of harm through violence with no penological purpose is indicative of

deliberate indifference to the inmate's safety' in violation of the Eighth Amendment to the U.S.

Constitution." (alterations omitted) (quoting *Mirabella v. Corr. Officer O'Keenan*, No. 15-CV-

142, 2016 WL 4678980, at *4 (W.D.N.Y. Sept. 7, 2016))); *see also Smith v. Miller*, No. 15-CV-

9561, 2017 WL 4838322, at *12 (S.D.N.Y. Oct. 23, 2017) (same).

The following allegations make plausible Plaintiff's claim that Defendant "had a role in arranging the attack." (Compl. 5.) First, Plaintiff and Defendant had a verbal altercation only two days before the attack, (Am. Compl. 4), which contributes to making Plaintiff's claim plausible, *see Jhagroo*, 2020 WL 419450, at \*7 (denying a summary judgment motion where, inter alia, the inmate and officer "had a profanity-laced disagreement" before the attack); *Mirabella v. O'Keenan*, No. 15-CV-142, 2018 WL 3659526, at \*4 (W.D.N.Y. Aug. 2, 2018) (denying a summary judgment motion due to, inter alia, evidence of "the temporal proximity between" the incitement and the attack). Second, Defendant allegedly made threatening comments to Plaintiff. (Am. Compl. 4.) These comments included telling Plaintiff that "he was gonna make sure something happened to [Plaintiff]," and, shortly after the attack, telling Plaintiff "I told you." (*Id.*) Such comments likewise contribute to making plausible Plaintiff's claim. *See Ayers v. Coughlin*, 780 F.2d 205, 209–10 (2d Cir. 1985) (finding that the defendant's statement that the plaintiff was "going to get what is coming to him," inter alia, suggested "intentional scheming" to assault the plaintiff); *Mirabella*, 2018 WL 3659526, at \*4 (denying a summary judgment motion where, inter alia, the defendant "told [the plaintiff] he had a 'hit' on him"). Third, Defendant was present at the time of the attack, and stepped between Plaintiff and the attacker, allowing the attacker to get away. (Am. Compl. 4.) That Defendant was present makes more plausible his role in the attack. *Cf. Jhagroo*, 2020 WL 419450, at \*7 (denying summary judgment where, inter alia, the defendant "point[ed] at [the plaintiff] just before he was assaulted"). The same is true of the fact that Plaintiff could not identify his attacker, including because it suggests that Defendant actively covered up the attacker's identity and because it suggests a lack of prior antipathy between Plaintiff and his attacker. *See Mirabella*, 2018 WL

9

3659526, at *4 (denying summary judgment due to, inter alia, the plaintiff's "statement that he

did not know or have any prior issues with the inmate who attacked him").

Defendant argues that he is entitled to qualified immunity.  (Def.'s Mem. 7–8.)

However, to the extent Defendant applies the law of qualified immunity to Plaintiff's failure to

protect claim, he only repeats arguments from elsewhere in his brief.  (*See* Def.'s Mem. 8

(arguing that, because "Plaintiff's allegations are insufficient to show that Defendant Stojkaj

violated his constitutional right[,] . . . [t]hey are thus by definition[] insufficient to show that

Defendant Stojkaj violated constitutional rights that were clearly established").)  Defendant has

not identified any ambiguity in the applicable legal standard.  *Cf. Deskovic v. City of Peekskill*,

894 F. Supp. 2d 443, 467 (S.D.N.Y. 2012) (denying a qualified immunity application where the

defendant "ha[d] not identified any changes in the legal standards").  Nor is the law regarding

failure to protect inmates unsettled or unclear.  *See Farmer*, 511 U.S. at 834 (describing the

requirements for an Eighth Amendment failure to protect claim); *Lewis v. Siwicki*, 944 F.3d 427,

430–31 (2d Cir. 2019) (same).  Thus, the Court rejects Defendant's qualified immunity

argument, and denies the Motion insofar as it seeks to dismiss Plaintiff's failure to protect claim.

### 3.  Retaliation Claim

Defendant argues that Plaintiff does not plausibly allege unlawful retaliation.  (Def.'s

Mem. 6–7.)  The Court agrees.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right

protected by the First Amendment; (2) the defendant's actions were motivated or substantially

caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused him some

injury."  *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  Here, Plaintiff has not

alleged that Defendant retaliated for protected conduct.  The Amended Complaint states only that

Plaintiff "had problems" and "had words" with Defendant.  (Am. Compl. 4.)  These claims are too vague to establish that Plaintiff was engaged in protected activity.  *See Moore v. Gardner*, 199 F. Supp. 2d 17, 30 (W.D.N.Y. 2002) (dismissing a "conclusory" retaliation claim where the plaintiff failed to "explain[] what specific 'complaints' of his [were] claimed to be protected activity"); *Williams v. Perlman*, No. 06-CV-936, 2009 WL 1652193, at *10 (N.D.N.Y. Feb. 5, 2009) (recommending dismissal of an "impermissibly vague" retaliation claim that did not identify "the protected activity that purportedly triggered retaliatory measures"), *report and recommendation adopted in relevant part*, 2009 WL 1652188 (N.D.N.Y. June 10, 2009).  Thus, Plaintiff's retaliation claim is dismissed.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted in part and denied in part.  Only Plaintiff's failure to protect claim against Defendant in his individual capacity survives.  Because this is the first adjudication of Plaintiff's claims, this partial dismissal is without prejudice.  Plaintiff may file a second amended complaint within 30 days of the date of this Opinion & Order.  The second amended complaint should contain appropriate changes to remedy the deficiencies identified in this Opinion & Order.  Plaintiff is advised that the second amended complaint will replace, not supplement, the instant Amended Complaint, and therefore must contain all of the alleged facts that the Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, his already-dismissed claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 26), update the docket as described in footnote 1 on page 1 of this Opinion & Order, and send a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:      September 24, 2021
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE