UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARELL NAUTIGUE JENKINS,

                              Plaintiff,

          v.

OFFICER S (DOWNSTATE), *et al.*,

                              Defendants.

---

No. 19-CV-10728 (KMK)

<u>OPINION & ORDER</u>

Darell N. Jenkins
Malone, NY
*Pro Se Plaintiff*

Sarande Dedushi, Esq.
NYS Office of The Attorney General
New York, NY
*Counsel for Defendant Officer Stojkaj*

KENNETH M. KARAS, United States District Judge:

    Plaintiff Darell Nautigue Jenkins ("Plaintiff"), proceeding pro se, brings this Action

under 42 U.S.C. § 1983 against Officer Stojkaj ("Defendant"), alleging that Defendant failed to

protect Plaintiff from an attack by another inmate.  (*See* Second Am. Compl. (Dkt. No. 51).)

Before the Court is Defendant's Motion for Summary Judgment (the "Motion").  (Not. of Mot.

(Dkt. No. 84).)  For the foregoing reasons, Defendant's Motion for Summary Judgment is

denied.

## I.  Background

### A.  Factual Background

    The following facts are taken from the Defendant's statement pursuant to Local Civil

Rule 56.1, (Def's Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 85)), and the admissible

evidence submitted by the Parties.  The facts are recounted "in the light most favorable to"

Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018)

(quotation marks omitted).[1]

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id*. at 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same). "A pro se litigant is not excused from this rule." *Brandever v. Port Imperial Ferry Corp*., No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted).

Here, Defendant filed and served his statement pursuant to Rule 56.1, (*see* Def's 56.1), in addition to the requisite statement notifying Plaintiff of the potential consequences of not responding to the Motion as required by Local Rule 56.2, (*see* Not. to Pro Se Litigant (Dkt. No. 86)). Despite this notice, Plaintiff failed to submit a response to Defendant's 56.1 Statement of Facts. (*See generally* Dkt.) Accordingly, the Court may conclude that the facts in Defendant's 56.1 Statement are uncontested and admissible. *See Brandever*, 2014 WL 1053774, at *3 (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted). *See also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund–Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and quotation marks omitted)).

Plaintiff was incarcerated at Downstate Correctional Facility ("Downstate") beginning on January 3, 2018, until he moved facilities on May 1, 2018. (Def's 56.1 ¶ 1; *see also* Decl. of Sarande Dedushi ("Dedushi Decl") Ex. B ("Pl's Dep."), at 32:6–23 (Dkt. Nos. 87, 87-2).) On January 17, 2018, "while Plaintiff's housing unit was being escorted for the noon meal, Plaintiff was slashed on the right side of his face by another incarcerated individual." (Def's 56.1 ¶ 2.) Plaintiff alleges that Defendant left him unattended prior to the incident after Plaintiff and Defendant got into a verbal confrontation, where Defendant allegedly told Plaintiff that "he was gonna make sure something happened to [Plaintiff]." (Pl's Mem. in Opp. to Def's Mot. ("Pl's Opp.") 1 (Dkt. No. 92).) After the incident, Plaintiff refused protection from Downstate, but was immediately confined in involuntary protective custody ("protective custody" or the "SHU") after a recommendation from Downstate officials. (Def's 56.1 ¶¶ 3–5.) Plaintiff's confinement was extended at a hearing on January 30, 2018, due to concerns regarding Plaintiff's injuries and continued safety. (*Id.*)

As a member of the New York State Department of Corrections and Community Supervision ("DOCCS"), Downstate implemented and maintained an incarcerated grievance program ("IGP") guided by DOCCS Directive 4040. (*Id.* ¶ 8; *see also* Decl. of Melissa Pickett ("Pickett Decl.") ¶¶ 1, 4 (Dkt. No. 89).) Individuals may file grievances about any type of event, treatment, or condition in the facility, with certain specific and limited exceptions. (Def's 56.1 ¶ 9; *see also* Pickett Decl. Ex. A ("Directive 4040") §§ 701.2(a), 701.3 (Dkt. No. 89) (defining terminology and identifying the "general policies" governing inmate grievances).) As a part of the grievance process, officials at Downstate created, maintained, and retained records of all grievances filed for at least the current calendar year, as well as the previous four years. (Def's 56.1 ¶¶ 12, 18.) After an individual files a grievance, the grievance is received by IGP, logged

and given a grievance number, and put onto a "status list." (*Id*. ¶ 14.)  That list contains grievances filed by each inmate, the status of their appeals to the Superintendent and CORC, decisions rendered by the Superintendent, and the date any decisions are sent to the grievant. (*Id*. ¶¶ 15.)  If an entry on the status list is empty, that indicates that there was no appeal to the Superintendent.  (*Id*. ¶ 16.)  Similarly, if there is no entry under the column titled "CORC," the grievant did not appeal the decision to CORC.  (*Id*. ¶ 17.)  At Downstate, individuals could send grievances through the mail, which would be collected from the grievance inbox or through inter-facility mail in the mailroom.  (*Id*. ¶ 6.)  In 2018, an individual in involuntary protective custody at Downstate could file a grievance through inter-facility mail "by handing them to Sergeants or Correction Officers assigned in the unit when mail was collected."  (*Id*. ¶ 7.)

As relevant to the instant Action, the Parties dispute whether Plaintiff filed a grievance related to the alleged incident.  Plaintiff states that he mailed a grievance against Defendant to the Inmate Grievance Program ("IGP") on January 19, 2018, for Defendant's alleged role in his injuries.  (Pl's Dep. 70:9–24; 72:15–20.)  Plaintiff also states that Defendant came to his block on that day, stating "whatever you try to write [likely referring to possible grievances], . . . it's not going to get answered so stop writing."  (*Id*. at 70:2–5; *see also id*. at 70:25–71:10; Letter from Plaintiff to Court (Sept. 19, 2022) (Dkt. No. 80) ("[Defendant] told me that if I wrote a grievance it wouldn't go out!").)  Plaintiff further states that Defendant returned to his cell with the grievance he attempted to send out stamped "return to sender."  (Pl's Dep. 71:21–25.)  Plaintiff states that he filed a second grievance against Defendant after he came to his cell on January 20, 2018.  (*Id*. at 71:20–72:14.)  Plaintiff also states that he sent a copy of the second grievance (or possibly, sent the grievance itself) to "Albany."  (*Id*. at 74:2–16.)  Plaintiff states that no action came of both of his grievances.  (*Id*. at 72:2–6; 73:16–18.)  However, Defendant

4

states that, based on records maintained by Downstate, CORC databases, and DOCCS computer records, Plaintiff never submitted a grievance regarding the January 17, 2018, incident. (Def's 56.1 ¶¶ 21–22; *see also* Decl. of Rachael Seguin ("Seguin Decl.") ¶¶ 6–8 (Dkt. No. 88); Seguin Decl. Ex. B (identifying no active cases and four unrelated closed cases filed in 2019 and 2020).)

    B.  Procedural History

        Plaintiff's Complaint was filed on September 20, 2019. (Compl. (Dkt. No. 1).) On January 16, 2020, the Court granted Plaintiff's petition to proceed in forma pauperis ("IFP"). (Dkt. No. 7.) On February 3, 2020, the Court issued an Order To Amend (the "Order"). (Dkt. No. 8.) The Order gave Plaintiff 60 days to file an amended complaint, absent which his complaint would be dismissed for failure to state a claim. (*Id.* at 6.) On February 20, 2020, Plaintiff filed his Amended Complaint. (Am. Compl. (Dkt. No. 9).) On August 17, 2020, Defendant filed a letter requesting a pre-motion conference regarding his anticipated motion to dismiss. (Dkt. No. 22.) In lieu of a pre-motion conference, the Court adopted a briefing schedule on August 25, 2020. (Dkt. No. 24.) Pursuant to that schedule, Defendant filed a motion to dismiss on September 24, 2020. (*See* Not. of Mot. (Dkt. No. 26); Mem. of Law in Supp. of Mot. (Dkt. No. 27).) After several extensions, (*see* Dkt. Nos. 28–44), Plaintiff filed his Opposition on July 7, 2021. (Pl.'s Opp'n for Summ. J. (Dkt. No. 45); Mem. of Law in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. Pursuant to FRCP Rule 56 (Dkt. No. 46).) On July 22, 2021, Defendant filed his Reply. (Dkt. No. 47.) On September 24, 2021, the Court granted in part and denied in part Defendant's Motion. (Op. (Dkt. No. 48).)

        On October 18, 2021, Plaintiff filed his Second Amended Complaint. (*See* Second Am. Compl.) After the Parties conducted discovery, Defendant filed a letter requesting a pre-motion conference regarding his upcoming motion for summary judgment on September 15, 2022. (Dkt. No. 78.) In lieu of a pre-motion conference, the Court adopted a briefing schedule on September

30, 2022.  (Dkt. No. 79.)  After an extension of time, (*see* Dkt. Nos. 82–83), Defendant filed the

instant Motion.  (*See* Not. Of Mot.; Def's 56.1; Not. To Pro Se Litigant; Dedushi Decl.; Seguin

Decl.; Pickett Decl.; Mem. Of Law in Supp. Of Mot. ("Def's Mem.") (Dkt. No. 90).)  Plaintiff

ostensibly filed two letters in Opposition.  (*See* Letter from Plaintiff to Court (Dec. 18, 2022)

(Dkt. No. 91); Pl's Opp.)  On January 12, 2023, Defendant filed his reply.  (Reply Mem. Of Law

in Supp. Of Mot. ("Def's Reply") (Dkt. No. 93).)  Plaintiff filed another letter in Opposition on

January 23, 2023.  (*See* Letter from Plaintiff to Court (Jan. 23, 2023) (Dkt. No. 94).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the

record evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor."  *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021), *cert. denied*,

143 S. Ct. 438 (2022); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).

"It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v.

1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive

Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020)

(same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the non[-]movant's claim," in which case "the non[-]moving party must

come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order

to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Insurance Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading.").  And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Division of New York State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). Moreover, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co*., 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[ ]made in light of the opposing party's pro se status" (italics omitted)). "Nonetheless, proceeding pro se does not

otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's

bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary

judgment." *Houston*, 27 F. Supp. 3d at 351 (alterations, italics, and quotation marks omitted);

*see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July

31, 2017) (same).

    B.  Analysis

      Defendant seeks summary judgment on all of Plaintiff's claims, arguing that "Plaintiff

did not properly exhaust his failure to protect claim under [the] Eighth Amendment in this action

prior to filing of his complaint."  (Def's Mem. 1; *see also id*. at 6–8.)  In addition, Defendant

argues that Plaintiff cannot meet his burden to demonstrate that the grievance process was

unavailable to him, which would excuse the exhaustion requirement.  (*Id*. at 8–10.)  The Court

will address each argument to the extent necessary to resolve the instant Motion.

      1.  The PLRA Framework

      The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "language is 'mandatory':

An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action)

absent exhaustion of available administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 638

(2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  This requirement applies to "all

inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the

relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison

grievance system holds out, and doing so *properly* . . . .  Proper exhaustion demands compliance

with a prison grievance system's deadlines and other critical procedural rules." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (alterations, citations, and quotation marks omitted) (emphasis in original).

To satisfy the exhaustion requirements, a prisoner "must exhaust all levels" of DOCCS's IGP. *Little v. Mun. Corp., City of N.Y.*, No. 12-CV-5851, 2017 WL 1184326, at *11 (S.D.N.Y. Mar. 29, 2017). The IGP provides for a three-step grievance process. *See* 7 N.Y.C.R.R. § 701 *et seq.*; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))). Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence. *See* 7 N.Y.C.R.R. § 701.5(a)(1). Once filed, the complaint goes to the facility's inmate grievance resolution committee ("IGRC"), which has up to 16 calendar days to resolve the grievance informally. *Id.* § 701.5(b)(1). If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii). The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the IGRC's written response, although the appealing party can seek an exception to the time limit. *See id.* § 701.5(c)(1). The third and final step is to appeal the superintendent's decision to the DOCCS Central Office Review Committee ("CORC"), which the prisoner must do within seven days of the superintendent's written response to the grievance. *Id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit. *See id.*

Given the requirement to exhaust all administrative remedies, *see Little*, 2017 WL 1184326, at

*11, "only after CORC has reviewed the appeal and rendered a decision are New York's

grievance procedures exhausted," *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at

*2 (S.D.N.Y. Nov. 5, 2008).

However, the PLRA "contains its own, textual exception to mandatory exhaustion."

*Ross*, 578 U.S. at 642.  As the Supreme Court has explained "the exhaustion requirement hinges

on the 'availab[ility]' of administrative remedies . . . .  [A]n inmate is required to exhaust those,

but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action

complained of.'"  *Id.* (quoting *Booth*, 532 U.S. at 738).

The Supreme Court has identified at least "three kinds of circumstances in which an

administrative remedy, although officially on the books, is not capable of use to obtain relief."

*Id.* at 643.  First, an "administrative procedure is unavailable when . . . it operates as a simple

dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief,

but no ordinary prisoner can discern or navigate it."  *Id.* at 643–44.  Third, an administrative

remedy may be unavailable "when prison administrators thwart inmates from taking advantage

of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 644.  The

Second Circuit has noted "that the three circumstances discussed in *Ross* do not appear to be

exhaustive," but has declined to "opine on what other circumstances might render an otherwise

available administrative remedy actually incapable of use."  *Williams*, 829 F.3d at 123 n.2.

Nonetheless, these three circumstances "guide the Court's inquiry."  *Khudan v. Lee*, No. 12-CV-

8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

11

2.  Availability and Adequate Exhaustion of Grievance Process

There is no dispute that a grievance procedure exists at DOCCS and existed at Downstate at the time of the incident in question.  As outlined by Defendant, Downstate implemented and maintained an IGP guided by DOCCS Directive 4040, in line with the typical grievance processes across New York State prison facilities.  (*See* Def's 56.1 ¶¶ 8–9; Pickett Decl. ¶¶ 1, 4.) Defendant argues that the inquiry invariably stops here: Downstate maintained a grievance procedure and, according to Downstate's records, Plaintiff did not file a grievance related to this incident.  (*See* Def's Mem. 7–8; Def's Reply 2–3 ("There is no dispute that a grievance procedure exists at DOCCS and existed at Downstate in 2018.  Nor is there any dispute that Plaintiff failed to properly file and exhaust a grievance as to his claim against the Defendant in this case.  Consequently, Plaintiff's claim should be dismissed for failure to exhaust."); Def's 56.1 ¶¶ 21–22; Seguin Decl. ¶¶ 6–8; Seguin Decl. Ex. B (identifying no active cases and four unrelated closed cases filed in 2019 and 2020).)  However, in filing the instant Motion, Defendant failed to properly take into account any of Plaintiff's reasons as to why he may not have exhausted, which the Court must credit at summary judgment.

It is true that "[o]nce [a] defendant[] ha[s] met [the] initial burden of demonstrating that a grievance process exists . . . a plaintiff bears the burden of 'demonstrat[ing] that other factors . . . rendered a nominally available procedure unavailable as a matter of fact.'"  *White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)).  Here, Plaintiff consistently stated throughout the pendency of the instant Motion that he indeed attempted to file a grievance but was thwarted by Defendant.  (*See, e.g.*, Letter from Plaintiff to Court (Feb. 25, 2022) (Dkt. No. 64-2) ("Even though I filed a grievan[ce] . . . [i]t was never answered."); Letter from Plaintiff to Court (Sept. 19, 2022) ("[Defendant] told me that if I wrote a grievance it wouldn't go out! . . . I wrote a grievance and it was destroyed; this

12

officer knows what he had done!"); Letter from Plaintiff to Court (Oct. 14, 2022) (Dkt. No. 81)
("I wrote serial grievances and[] [Defendant] told me . . . that I was wasting my time writing
these grievance[s] . . . because they are not going to be answered or mailed out."); Pl's Opp. 1
("When I was placed in IPC . . . I wrote several grievance[s]. . . . [Defendant] came to the IPC
house and told me no matter what you do [] no mail is going out to IGP and I have people
watching you!  That's why my grievances h[ave] never [been] able to be forwarded to IGP.").)
In Plaintiff's deposition, he stated that he mailed a grievance against Defendant on January 19,
2018, about Defendant's alleged role in Plaintiff's injuries, pursuant to the procedures for
inmates located in the SHU.  (*See* Pl's Dep. 70:9–24; 72:15–20; Def's 56.1 ¶¶ 6–7 (outlining the
grievance procedure for individuals in protective custody).)  However, Plaintiff states that
Defendant came to his block on that day, stating "whatever you try to write [likely referring to
possible grievances], it's not going to get . . . answered so stop writing."  (Pl's Dep. 70:2–5; *see
also id*. at 70:25–71:14 ("[Defendant] came to the block with the grievances, like, this is not
going out nowhere . . . .").)

     Before the Court at this juncture is "a clash of sworn statements" where "Plaintiff attested
that he gave his grievance to a correction officer, and [Defendant] submitted sworn statements
from inmate grievance program supervisors indicating that a review of their records revealed that
no grievance was filed."  *Hudson v. Kirkey*, No. 20-CV-581, 2021 WL 1966721, at *3 (N.D.N.Y.
May 17, 2021) (citation omitted).  "To the extent that these statements are in contradiction, the
Court cannot resolve this contradiction at the summary judgment stage, because the Court is
prohibited from making credibility determinations."  *Id*.; *see also McLean v. LaClair*, No. 19-
CV-1227, 2021 WL 671650, at *8 (N.D.N.Y. Feb. 22, 2021) ("Here, there is again a clash of
sworn statements: [the] [p]laintiff attests that he attempted to submit the appeals, and [the]

13

[d]efendants attest that they were never filed. . . .  [T]he Court cannot credit [the] [d]efendants'
sworn statements over [the] [p]laintiff's.")

Moreover, at summary judgment, the Court "must construe the record evidence in the
light most favorable to the non-moving party and draw all reasonable inferences in its favor."
*Torcivia*, 17 F.4th at 355.  Given this ambit, it is not clear to this Court that these two statements
are in fact contradictory.  Indeed, "the Court must infer that [Plaintiff's] grievance was never
filed because prison authorities did not *file it*, not because Plaintiff *did not submit it*."  *Hudson*,
2021 WL 1966721, at *4 (emphasis added); *see also McLean*, 2021 WL 671650, at *8 ("[T]here
is no necessary inconsistency between [the] [p]laintiff's claim that he mailed the appeals and
[the] [d]efendants' claim that they were never filed; and the Court must grant [the] [p]laintiff the
favorable inference that his grievance was sent and received, but not filed, for reasons out of his
control."); *Zulu v. Barnhart*, No. 16-CV-1408, 2019 WL 2997226, at *13 (N.D.N.Y. Apr. 22,
2019) ("Defendants' evidence is largely consistent with plaintiff's claim that . . . the timely
grievances that he attempted to submit while confined to the SHU at Marcy were not filed.  The
absence of any official records of plaintiff's initial attempts to give the incident comports with
[the] plaintiff's assertion that once he handed a grievance through the feed-up hatch in the SHU,
it was out of his possession and it was not filed."), *report and recommendation adopted*, 2019
WL 2150628 (N.D.N.Y. May 17, 2019).

In response, Defendant argues that Plaintiff cannot meet his burden to demonstrate the
grievance process was unavailable because he purportedly mailed a second grievance to the
Superintendent shortly after the first one was allegedly stopped by Defendant.  (Def's Mem. 8–
10.)  Defendant argues that this shows that (1) Plaintiff "failed to follow the DOCCS grievance
procedure" by choosing not to file his second grievance with IGP, (*see id*. at 9); (2) "Plaintiff

failed to properly follow-up and ensure that the second grievance he purports to have filed was exhausted through the grievance channels when he did not receive a response," (*id*.); and (3) Plaintiff "never filed [an] appeal to CORC that would be necessary to exhaust his claims," (*id*.). However, the Second Circuit has directly addressed a strikingly similar factual scenario, ultimately concluding that Plaintiff was not required to follow any of the steps Defendant now faults Plaintiff for failing to do.

In *Williams*, 829 F.3d at 120–21, a plaintiff alleged that, while he was housed in the SHU at Downstate, he wrote a grievance and gave it to a correction officer to forward to IGP on his behalf. Approximately one week later, the Downstate Superintendent walked through the SHU, where the plaintiff raised the incident to the superintendent directly, who said that she had no knowledge about the grievance and stated she would look into it. *Id*. at 121. Plaintiff never received a response to the grievance and alleged that the correction officer in the SHU never actually filed the grievance. *Id*. Similar to this case, the plaintiff never appealed the grievance. *Id*. The defendants in *Williams* argued that the plaintiff should have attempted to appeal the grievance in accordance with DOCCS procedures after he did not receive a timely response. *Id*. at 124. The Second Circuit disagreed, concluding that "[t]he regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id*. Accepting as true the plaintiff's allegation that the corrections officer never filed his grievance, the Second Circuit found that "the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies" where, on their face, "the regulations only contemplate appeals of grievances that were actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id*. As such, the Second Circuit held that "the grievance procedures

15

that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.'" *Id*. at 126 (quoting *Ross*, 578 U.S. at 643–44).

Here, Plaintiff's allegations and statements at his deposition mirror *Williams*.  Plaintiff states that he filed a second grievance against Defendant after he came to his cell on January 20, 2018.  (Pl's Dep. 71:20–72:14.)  While Plaintiff was unclear in his deposition, it appears that Plaintiff is claiming that he sent the second grievance to "Superintendent Morton" in "Albany" rather than using the IGP procedure.  (*Id*. at 70:12–17; 74:2–16; *see also* Dedushi Decl. Ex. C (copy of Plaintiff's second grievance) (Dkt. No. 87-3).)  Whether stylized as an appeal or a second grievance, Plaintiff's actions are similar to the plaintiff in *Williams*: after receiving his letter back stamped return to sender, he appealed to the superintendent of the facility for additional assistance with the grievance process as it appeared—based on the intervention of a correction officer—that IGP would never receive his claim.  Indeed, Plaintiff never received any further correspondence regarding his grievances he alleges that he filed.  (Pl's Dep. 72:2–6; 73:16–18.)

As in *Williams*, Plaintiff cannot be faulted for not following a procedure that does not exist according to DOCCS policies.  Defendant has not pointed to any DOCCS regulation guiding inmates whose grievances were never filed, (*see generally* Def's Mem.; Def's Reply), and as such, there may be no designated appeals process that Plaintiff should have followed to exhaust.  Accordingly, Defendant has failed to demonstrate the absence of a material factual dispute as to whether the grievance process at Downstate was "unavailable" due to the machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions.  *See McLean*, 2021 WL 671650, at *9; *Gill v. Frawley*, No. 02-CV-1380, 2006 WL 1742738, at *11 (N.D.N.Y. May 9, 2006) (noting that "[s]ome courts have suggested that an

16

inmate has exercised a reasonable effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official," and collecting cases (emphasis omitted)); *Fann v. Graham*, No. 15-CV-1339, 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that [the] plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether [the] plaintiff attempted to exhaust his administrative remedies[.]"), *report and recommendation adopted*, 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018); *Thaxton v. Simmons*, No. 10-CV-1318, 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [the] [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [the] [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants.  Such credibility assessments are to be resolved by a trier of fact.").

Thus, "[i]n order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence and parties presented."  *Hudson*, 2021 WL 1966721, at 4; *see also Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011) (stating that "the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA"); *McLean*, 2021 WL 671650, at *9 (ordering an exhaustion hearing on a similar PLRA affirmative defense to assess the credibility of witnesses and evidence).

III.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.  The Court will hold a status conference on October 11, 2023, at 11:30 AM.  The Clerk of Court is directed to terminate the pending motion at Dkt. No. 84 and mail a copy of this Opinion to Plaintiff at the address listed on the docket.

SO ORDERED.

Dated:   September 26, 2023
         White Plains, New York

_____
         KENNETH M. KARAS
         United States District Judge